UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORA SHERO,<br><br>            Plaintiff,<br><br>    v.<br><br>ROBERT P. SANDERS,<br><br>            Defendant. | Civil Action No. 1:24-cv-148 (RJL) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

I. **The Consular Non-Reviewability Doctrine does not Apply to Plaintiff's Claims.**

A. *Baan Rao plays no role in this issue.*

Despite the presence of the word "withhold" in *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), a consular officer's failure to bring a visa application to a conclusion is not protected from judicial review by the doctrine of consular nonreviewability. The court's use of this single word in a decision which was unrelated to the issues before this one and which was neither argued nor decided in *Baan Rao*, is not merely dicta, but in fact irrelevant.

*Baan Rao* involved an action under the Administrative Procedure Act to seek judicial review of a final decision on the merits by a United States consular official to "den[y]", *id.* at 1023, an E-2 visa to two Thai nationals. There was no dispute that a visa decision had in fact occurred, and that this brought the matter before the consul to a complete conclusion. Further, nowhere did the appellants ask the court to order the consular officer to make a decision but, rather, sought judicial review of the decisions that were made.

Nevertheless, "Defendants seize on the D.C. Circuit's use of the word 'withhold.'", *Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.*, Civil Action No. 21-1521 (RDM), 2022 U.S. Dist. LEXIS 133589, at *24, 617 F.Supp.3d 1, 2022 WL 2966333 (D.D.C. July 27, 2022), to attempt to extend *Baan Rao* to an issue neither before nor considered by that court. However, the argument that any failure by a consular officer to issue a visa to an applicant amounts to a decision to "withhold" the visa and therefore is unreviewable represents a very strained reading which is controlling, or even relevant here for at least five reasons.

First, this language is "unpersuasive given our Court of Appeals' characterization of the doctrine as applicable to 'a consular official's decision to issue or withhold a visa' rather than the failure to make a decision at all. *Saavedra Bruno*, 197 F. 3d at 1159 (emphasis added)." *Nine*

1

*Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 291 n.21 (D.D.C. 2016) (emphasis included). The Defendant does not acknowledge, much less rebut, *Nine Iraqi Allies'* refutation of its interpretation of the language of *Saavedra Bruno,* which is merely repeated in *Baan Rao*.

Second, it is unreasonable to suppose that this Court intended its use of the word "withhold" in *Baan Rao* to bar actions to compel decisions by consular officers on visa applications. Not only is it highly unlikely that the court would have simply overruled numerous decisions from this circuit and elsewhere without so much as alluding to them, even indirectly, *See Al-Gharawy*, 2022 U.S. Dist. LEXIS 133589, at *25, the idea that it would create a circuit split without even referring to it strains credulity.[1] See *United States v. Philip Morris USA Inc.*, 364 U.S. App. D.C. 454,396 F.3d 1190, 1201 (D.C. Cir.) ("[W]e avoid creating circuit splits when possible . . . ."), *cert*. *denied*, 546 U.S. 960 (2005).

Here the 9th Circuit has held that " we find that the consulate had a duty to act and that to date, eight years after application of the visas, the consulate has failed to act in accordance with that duty and the writ (of mandamus) should issue." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997) (Parenthetical material added). It would create a circuit split in light of *Patel* if this Court held that the courts have no authority to compel a consulate to decide a visa application on the theory that its failure to make a final decision amounted to a non-reviewable decision to "withhold" a visa.

Third, such a holding, even if intended, would be dicta. *See Al-Gharawy*, 617 F. Supp. 3d 1, 15 (D.C.D. 2022). As noted, there was no claim in *Baan Rao* that the consulate

---

[1] "In opinions addressing a matter of first impression in a circuit, the court will ordinarily set forth the relevant law in the other circuits." Bryan A. Garner et al., *The Law of Judicial Precedent* 512 (2016).

unreasonably delayed a decision on the visa applications and no request that the court order it to decide them. Indeed, the Court itself characterized the decisions it was reviewing as "denied" visa applications, not decisions to "withhold" them. *Id*. at 1023, Reading the reference to the word "withhold" as invited by the Defendant to include cases in which a consular officer has not made a final decision to deny or grant a visa would not be necessary to support the decision reached by the Court of Appeals in *Baan Rao,* and therefore would be dicta.

Fourth, even if not dicta, the use of the word "withhold" in *Baan Rao* to support a claim of judicial non-reviewability is not a precedent because the issue of whether a court can order a consular official to decide a case which has been nominally, but not finally, refused, was never addressed in that decision. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *United States v. Sheffield*, 832 F.3d 296, 308 n.3 (D.C. Cir. 2016) (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (internal citation omitted)); Bryan A. Garner et al., *The Law of Judicial Precedent* 44 (2016) (cases are only "precedent" for "legal questions actually presented to and decided by the court").

Accordingly, *Baan Rao* should play no role in this Court's decision here.

**B.** *Neither does Saavedra Bruno*

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999), is premised upon the fact that "[t]he INA confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations. *See* 8 U.S.C. §§ 1104(a), 1201(a)." *Saavedra Bruno*, 197 F.3d at 1156. That section provides in relevant part that "[t]he Secretary of State shall be charged with the administration and the enforcement of the provisions of this Act and all other immigration and nationality laws relating to (1) the powers,

3

duties and functions of diplomatic and consular officers of the United States, except those powers, duties and functions conferred upon the consular officers relating to the granting or refusal of visas;".

Regardless of whether Plaintiffs' visa application has been nominally "refused", that is not the issue in this case. Rather, the issue is whether the Plaintiff's visa application has been *brought to a conclusion* within a reasonable time. It hasn't, and so *Saavedra Bruno*, has no relevance to this matter.

However, there are further reasons for disregarding *Saavedra Bruno* here. It also relied heavily upon the historical nature of the consular nonreviewability doctrine, observing that:

> For more than a century, the Supreme Court has thus recognized the power to exclude aliens as " 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers--a power to be exercised exclusively by the political branches of government'" **7** and not "granted away or restrained on behalf of anyone." *The Chinese Exclusion Case*, 130 U.S. 581, 609, 32 L. Ed. 1068, 9 S. Ct. 623 (1889).

*Saavedra Bruno*, 197 F.3d at 1159.

But the Supreme Court has not recognized the right of a consular officer to fail to bring a visa application to a conclusion for more than a century or, in fact, at all. Nor is there any reason why not requiring consular officers to actually do their job, and make a final decision on a visa application, is 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers". After all, if any of those interests are endangered, the consular officer can simply (finally) refuse the visa, and so bring the matter to a conclusion. Therefore, neither the historical context nor the policy concerns which drove *Saavedra Bruno* have any relevance here.

    C. *The presumption of reviewability requires judicial review where, as here, there is no express law prohibiting it.*

4

*Abbott Lab'ies v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977) held that a statute will not be read to cut off judicial review otherwise available under the APA "unless there is persuasive reason to believe that such was the purpose of Congress." *Id*. As the APA's legislative history explained: "[t]o preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it." *Id.* at 140 n.2 (quoting Staff of Senate Comm. on the Judiciary, 79th Cong.. 2d Sess., Administrative Procedure Act Legislative History 275 (1946) (House Report), available at https://books.google.com/books?id=ycgh_K_0iAEC&printsec=frontcover. Otherwise, "[t]he statutes of Congress [would be] merely advisory." Administrative Procedure Act Legislative History, at 275.

Accordingly, if there is any ambiguity about the inapplicability of the consular nonreviewability doctrine to actions to compel compliance with § 555(b), which in fact there isn't, it must bow to the very strong presumption of judicial review.

Therefore there is no merit to the assertion that this action is barred under the doctrine of consular non-reviewability.

## II.     5 USC 555(b) Places a Clear, Non-Discretionary Duty on a Consular Officer to Bring an an Immigrant Visa Application to a Conclusion in a Reasonable Time

The government claims that the Defendant has no clear duty to adjudicate any specific visa application. However, "[t]he APA 'imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it "'within a reasonable

5

time.'"" *Meyou v. United States Dep't of State*, 2022 U.S. Dist. LEXIS 88737, *7, 2022 WL 1556344 (D.D.C.), quoting *Mashpee Wampanoag Tribal Council, Inc. v.Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003), quoting 5 U.S.C. § 555(b). In fact, § 555(b) is precisely the sole basis upon which the court of appeals found such a nondiscretionary duty to exist in *Mashpee*.

In *Mashpee*, "[t]he Secretary argues that because the BIA did not in its regulations impose upon itself a 'mandatory, nondiscretionary duty to begin to consider the Mashpee petition' by a time certain, the district court 'lacked jurisdiction to exercise mandamus to compel Interior to place the Mashpee petition on active consideration.'". Id. at 1099. The court directly rejected this argument because "Mashpee's claim arose under the Administrative Procedure Act, which imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time', 5 U.S.C. § 555(b)." *Id.*

The fact that the court did not find any other basis upon which the Secretary had a mandatory, nondiscretionary duty to begin to consider the petition in *Mashpee* by a time certain, establishes that none other was needed. If § 555(b) imposed a mandatory non-discretionary duty upon the agency in *Mashpee*, there is no reason why it would not also impose such a duty upon the consul in the processing of visas, the government offers none, and in fact numerous courts of this district have so held. *See, e.g., Meyou*, 2022 U.S. Dist. LEXIS 88737 at *7, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100-101 (D.C.D. 2020); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 282 (D.C.D. 2016).

III.     **The Motion is Premature**.

In *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2020), the court reversed a decision dismissing the plaintiffs' mandamus action for failure to state a claim because

> While a 'first in, first out' approach with enumerated exceptions may be a rule of reason, we do not know enough about how the agency implements its rules and exceptions. We also think that Plaintiffs have pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the long wait. The agency may be able to refute these contentions, but at this stage we may review only Plaintiffs' pleadings. Among the issues that may be important on remand are resource constraints. The agency may well be able to show resource constraints and competing priorities in any number of ways. And courts generally "have no basis for reordering agency priorities." In re Barr Laboratories, Inc., 930 F.2d 72, 76, 289 U.S. App. D.C. 187 (D.C.Cir. 1991); see also Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 280 (4th Cir. 2004) (noting that when an agency faces "a backlog of tens of thousands of cases," it "operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess"). But at this point we cannot rely on the agency's allegations to find as a matter of law that this factor necessarily favors the agency.

*Gonzalez*, 985 F.3d at 375-376.

This case is primarily distinguishable from *Gonzalez* in that here the Defendant doesn't even claim to be following a First In – First Out (FIFO) approach – in fact its motion says nothing about its approach to processing immigrant visa applications at all[2]. Further, the Plaintiff's U.S. citizens son's health is being adversely affected by the weather in Pakistan where he is forced to live until his father can come to the United States, Compl. ¶21. Finally, just as in *Gonzalez*, even if the Defendant here does follow a rule of reason of some sort in adjudicating immigrant visas, we not only have no idea what it is, but we certainly do not know enough about

---

[2] Indeed, as discussed below, the mere fact that upon information and belief, the Defendant and/or its predecessor(s) have issued or finally refused numerous immigrant visas to applicants who filed all documents necessary to become documentarily qualified for an immigrant visa interview and regarding whom all necessary documents had been received from USICS after March 20, 2021, Compl. ¶¶ 16-18, the Defendant certainly cannot be following a "first-in, first out" methodology.

how the Defendant implements it or any other rules and exceptions. Nor has it shown resource constraints nor competing priorities in any way.

In fact, unlike as in *Gonzalez*, not only can this Court not rely on the agency's allegations to find as a matter of law that this factor necessarily favors the agency, but in fact there are not any allegations by the Defendant in the pleadings upon which it could rely even if it were so inclined. See *Emor*, 785 F.3d at 677.

Accordingly, the Defendant's motion is premature at this stage of the proceedings. *Gonzalez*, 985 F.3d at 376.

### IV. On the Merits, the Delay Here is Unreasonable

Application of the *TRAC* factors demonstrates that the delay experienced by Dr. Shero in bringing her immigrant visa application to a conclusion is unreasonable.

#### A. The first TRAC factor tips sharply in Dr. Shero's favor

"The D.C. Circuit has explained that the first TRAC factor—the time agencies take to make decisions must be governed by a 'rule of reason'—is the 'most important,'". *Memon v. Blinken*, 2023 U.S. Dist. LEXIS 17016, *4, 2023 WL 1438396, (D.C.D.C.) quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). "In general, courts in this jurisdiction have regularly found that the Government applies a 'rule of reason' to the review of visa petitions by adjudicating applications in the order they were filed. … Simply put, the inquiry begins and ends with Defendant's consistent application of the 'first-in, first-out' methodology." *Memon*, 2023 U.S. Dist. LEXIS 17016, at *4-5.

Since, upon information and belief, the Defendant and/or its predecessor(s) have issued or finally refused numerous immigrant visas to applicants who filed all documents necessary to become documentarily qualified for an immigrant visa interview and regarding whom all necessary documents had been received from USICS after March 20, 2021, Compl. ¶¶ 16-18, the Defendant certainly cannot be following a "first-in, first out" methodology.

But even if it were to be concluded that the mere fact that the Defendant does not appear to be, or even claims to be, operating on a First-In, First Out basis, was not sufficient grounds to find that it wasn't applying a rule of reason, that doesn't change the fact that to be able to prevail on this TRAC Factor, the Defendant should, at the very least, claim that "there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay," *Khazaei* (*v. Blinken*), 2023 WL 6065095, at *6 (D.C.D.C.)," *Rashidian v. Garland*, 2024 U.S. Dist. LEXIS 40727, *16, 2024 WL 1076810 (D.C.D.C.). Here however, the Defendant has offered no "rhyme or reason", in fact no explanation whatsoever, as to what, if any, system it is using to process visa applications, or why a decision has yet to be made on Plaintiff's visa application.

Further, the mere fact that Plaintiff's visa application has been pending less than any particular time period is not only facially irrelevant to the question of whether the consul has been applying a rule of reason in processing immigrant visa applications, but to determine the first TRAC factor on this basis would be directly contrary to the D.C. Circuit Court of Appeals holding in *Mashpee* that "[w]hether a delay is unreasonable (or, of course reasonable) 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part… upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency',". *Id*. at 1102. (parenthetical material added).

9

Finally, neither the resources available to the agency nor the impact of the COVID-19 pandemic on the State Department's resources for visa processing can be of relevance in determining whether the delay here is unreasonable if neither the lack of resources nor the impact of the Covid-19 pandemic has prevented the Defendant from bringing to a conclusion visa applications which became documentarily qualified, and from which all necessary documents were received from the USCIS, after Plaintiff's.

Accordingly, inasmuch as it appears, upon information and belief, that the Defendant is not processing immigrant visa applications on a first-in, first-out basis, and has offered neither rhyme nor reason to explain the delay in Plaintiff's case, and certainly none that would explain why, upon information and belief, other visa applicants who became eligible for visas after Plaintiff have been processed ahead of him, the first TRAC factor tips sharply in Plaintiff's favor

### B. *The 2nd TRAC factor also tips sharply in Plaintiff's favor*

As this Court has observed:

> The second TRAC factor is concerned with whether Congress has provided some indication as to the speed with which it expects the agency to act. In re United Mine Workers, 190 F.3d at 549. Plaintiffs point to 8 U.S.C. § 1571(b), which provides: "It is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application[.]" This "sense of Congress" is not directed towards Form I-485 petitions in particular but rather applies generally to any "immigrant benefit application." Id. And, as the government points out, "a sense of Congress resolution is not law." Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6, 383 U.S. App. D.C. 223 (D.C. Cir. 2008). That said, the second TRAC factor asks merely whether Congress has provided an "*indication* of the speed with which it expects the agency to proceed." In re United Mine Workers, 190 F.3d at 549 (emphasis added). And § 1571(b) provides such an indication, at least as a general matter: immigrant benefit applications should be resolved within one hundred and eighty days. Because plaintiffs' petitions have remained pending for longer than that period, the second TRAC factor cuts in their favor.

*Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 101 (D.C.D. 2021).

So likewise here, because Plaintiff's visa application has remained pending for over 180 days (in fact, since April 5, 2020, Compl. ¶7, or 4 years and 25 days) therefore the second *TRAC* factor cuts in his favor.

In fact, the case of immediate relatives of U.S. citizens, such as the Plaintiff, Congress has expressed itself even more unequivocally, providing that

> It **shall** be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K–1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

P.L. 106-113, § 237 (emphasis added).

Accordingly, the second *TRAC* factor tips sharply in Dr. Shero's favor.

C. *The 3rd and Fifth factors also tip sharply in Plaintiff's favor*

Factor (3) strongly tips towards Plaintiff as well. The Plaintiff's U.S. citizens son's health is being adversely affected by the weather in Pakistan where he is living until his father can come to the United States. Compl. ¶21. On the other hand, were he to return the U.S. his mother, then they both would face indefinite separation from the Plaint. This would put h uman welfare very much at stake in this action, in that, "[c]ourts, …, have recognized indefinite family separation as a form of irreparable injury. *See, e.g., Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (identifying "separated families" as "substantial injuries and even irreparable harms"); *Doe v. Trump*, 418 F. Supp. 3d at 598-99 (granting preliminary injunction and finding family separation caused by Proclamation to be basis for irreparable

harm); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 371 (S.D.N.Y. 2019) ("[C]ourts recognize the irreparable harms that stem from being unlawfully separated from family."); *J.S.R. v. Sessions*, 330 F. Supp. 3d 731, 742-43 (D. Conn. 2018) (issuing preliminary injunction and finding that family separation was irreparable injury). Make the Rd. N.Y. v. Pompeo, 475 F. Supp. 3d 232, 268.

The fifth factor tips sharply in Plaintiff's favor for the same reason.

### D. The 4th and 6th factors are neutral

Nor does the fourth factor favor the Defendant, even though "[t]he D.C. Circuit has 'refused to grant relief, even though all the other factors considered in TRAC favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain.' *Rashidian,* 2024 U.S. Dist. LEXIS 40727 at *19, quoting *Mashpee*, 336 F.3d at 1100 (D.C. Cir. 2003). However, in *Mashpee* "other petitioners had been waiting longer for a decision, and the Secretary claimed that because of the agency's limited resources any relief to Mashpee would necessarily come at the expense of those applicants." Id. at 1100. No such claim has been made here, and Plaintiff has made the allegation that in fact others who have been waiting less than he has have received a decision. Compl. ¶16.

The Sixth TRAC factor is likewise neutral. Plaintiff does not claim that Defendant has acted in bad faith.

### CONCLUSION

For the foregoing reasons, the Court should deny this motion.

Respectfully Submitted this 30th day of April, 2024.

**/s/ Michael E. Piston**
Michael E. Piston (MI 002)

Attorney for the Plaintiff
3808 Union St Ste 9A
Flushing, NY 11354
Ph: 646-876-3772

Fax: 206-770-6350
Email: Michaelpiston4@gmail.com